UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| LP & D, Inc., | * | |
| | * | |
| ECOSOURCE, LLC, | * | |
| PAUL OLIVEIRA, | * | No. 16-11129 |
| LISA ELLIS-OLIVEIRA, | * | No. 18-12135 |
| | * | No. 18-12139 |
| Appellants, | * | No. 18-12142 |
| | * | No. 18-12163 |
| v. | * | |
| | * | |
| JOHN J. AQUINO, | * | |
| CHAPTER 7 TRUSTEE | * | |
| | * | |
| Appellee. | * | |

Memorandum & Order

August 31, 2020

TALWANI, D.J.

      This is a consolidated appeal from orders by the Bankruptcy Court related to the Chapter 7

bankruptcy proceedings for the estate of Debtor LP&D, Inc.[1] Appellants EcoSource, LLC

("EcoSource"), Paul Oliveira, and Lisa Ellis-Oliveira (collectively, "the EcoSource parties") seek

review of orders 1) denying their motion to compel the Chapter 7 Trustee's compliance with a

purported agreement to settle an adversary proceeding against them; 2) allowing the Trustee's

motion to enter into a Claims Litigation Agreement with creditor CleanNet USA, Inc.

("CleanNet"), which permits CleanNet to prosecute the adversary proceeding on behalf of the

---

[1] The Bankruptcy Court has docketed these proceedings as In re LP&D, Inc., No. 12-14894-FJB. Filings on that docket that are not included in the parties' Joint Appendix ("J.A.") are cited here as Bankr. Ct. Dckt. followed by the ECF number.

LP&D bankruptcy estate; and 3) denying their objections to claims asserted by CleanNet against the LP&D bankruptcy estate.

After careful review of the voluminous record, and for the following reasons, the Bankruptcy Court is AFFIRMED.

I.    Background

    A.  Events Prior to the Initial Bankruptcy Filing

In 1997, LP&D, Inc. ("LP&D") became an Area Operator for CleanNet, a commercial cleaning franchisor. J.A. 468-69 (Paul Oliveira Test.) [#18-2]. Under an Area Operator Agreement, CleanNet designated LP&D a master franchisee for sale of CleanNet commercial cleaning business franchises, and LP&D recruited "unit franchisees" in certain Massachusetts counties. J.A. 388-89 (Salek Test.) [#18-2]; J.A. 649-701 (Area Operator Agreement, CleanNet and LP&D) [#18-3].

Beginning in 2008, LP&D and CleanNet were named as defendants in a number of lawsuits alleging that they had misclassified employees as franchisees. J.A. 522-25 (Paul Oliveira Test.) [#18-2]; see, e.g., J.A. 1028-46 (Class Action Compl., H&S Group, Corp. v. CleanNet of New England, Inc.) [#18-4].[2]

Among these actions was one filed on March 31, 2011, by a group of CleanNet franchisees/cleaners in Suffolk County Superior Court alleging violations of the Massachusetts Independent Contractor Law and Wage Act and asserting common law claims, which CleanNet removed to federal court. See Notice of Removal ¶ 1, Sola v. CleanNet USA, Inc., No. 12-cv-10580 (D. Mass. Mar. 30, 2012), ECF No. 1 (the "Sola class action").[3]

---

[2] Appellants acknowledge that LP&D was "d/b/a CleanNet of New England, Inc." Appellants Br. 24 [#19].

[3] The original complaint included CleanNet of New England as a defendant. On December 6, 2011, Sola filed an amended complaint, eliminating CleanNet of New England, Inc., as a

In early 2012, Paul Oliveira helped set up EcoSource, LLC, another commercial cleaning company. J.A. 485-86 (Paul Oliveira Test.) [#18-2]; J.A. 2326 (Bankr. Ct. Dec.) [#18-12].

B. The Chapter 11 Proceedings

On June 5, 2012, LP&D filed for bankruptcy under Chapter 11 of the Bankruptcy Code. J.A. 9 ¶ 1 (EcoSource Parties' Mot. to Compel Pl. Trustee to Comply with Settlement) ("Mot. to Compel") [#18-1]. Nixon Peabody, LLP ("Nixon Peabody") represented the bankruptcy estate between 2012 and 2014 while the case proceeded under Chapter 11. J.A. 1425-1484 (Nixon Peabody Application for Payment) [#18-6].

On December 18, 2012, parties not currently before the court filed proofs of claims numbered 4 through 6 asserting employee misclassification claims against the LP&D estate. See Bankr. Ct. Dckt. Claims Register, Claims 4-1, 5-1, 6-1. CleanNet purchased those claims and on January 28, 2013, those claims were assigned to CleanNet. See Assignments of Claims, Bankr. Ct. Dckt. Nos. 58-60; J.A. 420 (Salek Test.) [#18-2].

C. The Sola Class Action Stipulation

On November 25, 2013, CleanNet entered into a stipulation of settlement in the Sola class action. J.A. 1643-58 (Stipulation of Settlement of Class Action and Assignment of Claims) ("Sola Stipulation") [#18-8]. CleanNet agreed to pay the Sola plaintiffs $7,500,000. Id. at 1646 ¶ 12. As part of the settlement, all claims class members had against LP&D were assigned to CleanNet. Id. at 1653-54 ¶¶ 38-41.

---

defendant and, among other changes, alleging that Paul Oliveira was the person responsible for management of CleanNet of New England and naming him as a defendant. State Ct. Am. Compl., Sola v. CleanNet USA, Inc., No. 12-cv-10580 (D. Mass. Mar. 30, 2012) ECF No. 1-6. On March 9, 2012, Sola filed a Notice of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(i) voluntarily dismissing all claims against Paul Oliveira. Notice of Voluntary Dismissal, Sola v. CleanNet USA, Inc., No. 12-cv-10580 (D. Mass. Mar. 30, 2012) ECF No. 1-18.

D.   The Initial Chapter 7 Proceedings

On May 7, 2014, LP&D filed a notice to convert the case to a case under Chapter 7 of the Bankruptcy Code. Order on Notice of Voluntary Conversion to Chapter 7, Bankr. Ct. Dckt. No. 136. The Bankruptcy Court appointed John Aquino (Aquino or the "Trustee") as the Chapter 7 trustee for the LP&D estate, Certificate of Appointment, Bankr. Ct. Dckt. 138 (May 7, 2014), and set September 2, 2014, as the bar date for filing proofs of claims. Notice of Ch. 7 Bankruptcy Case, Bankr. Ct. Dckt. No. 140 (May 7, 2014).

On May 30, 2014, CleanNet filed proofs of claim 8 through 56, asserting claims assigned to CleanNet pursuant to the Sola Stipulation. See, e.g., J.A. 1515 (Proof of Claim 56) [#18-7].[4] On September 2, 2014, CleanNet filed proof of claim 58 for royalties. J.A. 1-8 (Claim 58-1) [#18-1].

E.   The Adversary Proceeding, the EcoSource Parties' Settlement Negotiations
with the Trustee, and the Trustee's Agreement with CleanNet

Meanwhile, on June 4, 2014, the Trustee initiated an Adversary Proceeding against the EcoSource parties. The Trustee alleged that on June 1, 2012, LP&D transferred substantially all of its assets to EcoSource in exchange for a cash payment of $12,500 and the assumption by EcoSource of up to $97,300 of LP&D's obligations pursuant to a loan agreement with People's United Bank. J.A. 53 ¶ 4 (Trustee's Opp'n to EcoSource Parties' Mot. to Compel) [#18-1]. The Trustee alleged further that, at the time of transfer, Paul Oliveira served as LP&D's Secretary and Lisa Ellis-Oliveira served as LP&D's President and Treasurer. J.A. 2326 (Bankr. Ct. Dec.) [#18-12]. The Trustee contended the Oliveiras fraudulently conveyed LP&D's assets to EcoSource and sought to recover those assets for the estate as well as equitable relief. See Adversary Proceeding Compl., Bankr. Ct. Dckt. No. 149 (June 4, 2014).

---

[4] CleanNet provided one exemplar assigned proof of claim, Number 56, to the Bankruptcy Court for the evidentiary hearing. J.A. 333 n.3 (Am. Joint Pre-Trial Statement) [#18-2].

On January 13, 2015, the Trustee and CleanNet entered into a court-approved litigation financing agreement ("Financing Agreement"). Order on Trustee's Mot., Bankr. Ct. Dckt. No. 170. CleanNet agreed to advance up to $250,000 (the "Loan Amount") to fund the estate's attorney fees and other litigation expenses in exchange for a lien on any recovery and a super-priority administrative claim against the LP&D estate for the amount advanced. See Order Approving Limited Postpetition Financing, Bankr. Ct. Dckt. No. 172 (Jan 23, 2015). The loan agreement required the Trustee to keep CleanNet apprised of the status of litigation. Id. at ¶ 16.

In or about November 2015, the Trustee and the EcoSource parties began engaging in settlement negotiations. J.A. 1982-83 (Aquino Test.) [#18-10]. In an email on January 29, 2016, the EcoSource parties' counsel, Peter Haley, advised the Trustee's counsel that Haley had confirmed with the Trustee that, "subject to documentation acceptable to all parties," the EcoSource parties were "agreeable to a settlement" whereby the EcoSource parties would pay $225,000 to the LP&D estate. Id. at 1984-85; J.A. 572 (Jan. 29, 2016 Email) [#18-3]. The Trustee was copied on the email and after receiving it, called Attorney Haley to ensure the EcoSource parties understood any agreement had to include a waiver from Nixon Peabody of its claim for fees from the Chapter 11 phase of the bankruptcy. J.A. 1985 (Aquino Test.) [#18-10].

The Trustee later testified that he had intended to submit the settlement agreement to the Bankruptcy Court for approval once the terms were agreed to and the written agreement was finalized, but did not believe the parties had an agreement in place. Id. at 1988. As discussed further below, the EcoSource parties contend that an enforceable settlement of the Adversary Proceeding was reached as of January 29, 2016.

On February 12, 2016, CleanNet learned about the settlement discussions and wrote the Trustee to object and to propose an alternative plan to auction off the Trustee's claims against the EcoSource parties. J.A. 574-76 (CleanNet Letter to Trustee) [#18-3]. The Trustee responded on

February 17, 2016, rejecting CleanNet's idea and stating that the "pending proposal" with the EcoSource parties, in part, provided for the "resolution of the Nixon Peabody claim." J.A. 577-78 (Trustee Resp. to CleanNet) [#18-3]. The Trustee did, however, inform CleanNet he would "consider an offer to purchase the litigation claims for an amount which provides greater financial benefits than the proposed settlement of the litigation." Id. at 578.

On February 19, 2016, the Trustee and the EcoSource parties filed a joint motion to extend pretrial deadlines with the Bankruptcy Court "pending the parties efforts to negotiate definitive settlement documentation," stating that "[t]he Parties have reached agreement in principle regarding the primary terms of a prospective settlement resolving the Trustee's claims in this matter. The aforesaid agreement in principle is subject to the documentation of a definitive written settlement agreement in a form and substance acceptable to the Parties, and approval of the Court." J.A. 579-81 (Joint Mot. to Extend Pre-Trial Deadlines) [#18-3]. The joint motion also stated that the parties "further believe that if such agreement is reached, requisite settlement pleadings could be filed by no later than forty-five (45) days from the date hereof." Id. at 580 ¶ 8 (emphasis added).

On February 26, 2016, the Trustee and CleanNet agreed on economic terms for an alternative arrangement where CleanNet would take over[5] the adversary proceeding on behalf of the bankruptcy estate, which the Trustee found to be superior, in terms of returns to the bankruptcy estate, to settlement with the EcoSource parties. J.A. 1992-94 (Aquino Test.) [#18-10].

On March 4, 2016, counsel for the EcoSource parties sent the Trustee an unsigned settlement agreement. J.A. 45-48 (Settlement Doc.) [#18-1]. The document stated the EcoSource

---

[5] Originally, the Trustee and CleanNet agreed to a sale of the estate's claims to CleanNet, but revised the agreement prior to submitting it to the Bankruptcy Court so that CleanNet would prosecute the claims on behalf of the estate without a transfer of the claims to CleanNet. J.A. 1999-2003 (Aquino Test.) [#18-10].

parties would pay $225,000 to the LP&D estate in return for dismissal of the Adversary

Proceeding. Id. at ¶ 3. The document included a section on the Nixon Peabody claim, reading:

> Nixon Peabody will not seek to recover from the Settlement Proceeds any fees and
> expenses it has incurred in this matter and which may be allowed by the
> Bankruptcy Court. The Trustee agrees that, subject to the entry of a court order
> authorizing the same, Nixon Peabody may retain and apply any retainers or
> advance payments made to it by, or on behalf of, the Debtor in this matter. The
> Trustee will assent to the entry of any such order.

Id. at ¶ 7. The document included a blank signature block for Nixon Peabody but did not indicate

whether the law firm had agreed to the proposal.

The Trustee did not move forward with settlement, and later testified that the document

sent by the EcoSource parties' counsel "deviated" from their prior discussions and included

"provisions and terms that were unacceptable to me." J.A. 1992 (Aquino Test.) [#18-10]. The

Trustee did not engage "in a detailed review of the settlement agreement" and did not submit the

draft to the Bankruptcy Court. Id. at 1995 (quoting from Aquino's interrogatory response); see id.

at 1997-98 (stating one reason why Trustee did not proceed with settlement was that CleanNet's

offer was superior and he believed it would be "futile" to submit the EcoSource parties' settlement

proposal to the Bankruptcy Court because he could no longer say it was "in the best interest of

creditors").

On March 23, 2016, the EcoSource parties filed a motion to compel the Trustee to comply

with the purported settlement. J.A. 9-16 (Mot. to Compel) [#18-1].

On May 12, 2016, while the motion to compel was still pending, the Trustee filed a motion

seeking approval of a Claims Litigation Agreement ("CLA") with CleanNet. J.A. 66 (Trustee's

Mot. for Entry of Order Approving Claims Litigation Agreement) [#18-1]; J.A. 77-81 (CLA)

[#18-1]. The CLA stated the Trustee would permit CleanNet to pursue the Adversary Proceeding

against the EcoSource parties on behalf of the estate in return for a payment by CleanNet to the

estate of $325,000, less the amount owed to CleanNet for its previous litigation financing. J.A. 77

§ 2(i) (CLA) [#18-1]. CleanNet also guaranteed return to the estate of $127,000 representing the

approximate amount claimed by Nixon Peabody and agreed to pay all litigation costs and

expenses going forward. Id. at 77-78 §§ 2(ii), 6(a) (CLA) [#18-1]. In return, CleanNet would

receive an "administrative claim in the Debtor's bankruptcy case equal to the lesser of (i)

$452,000 minus the sum of the Loan Amount and the [$127,000 held for Nixon Peabody] and (ii)

the amount of cash proceeds from the Claims actually turned over to the Trustee." Id. at 78 § 5(b).

CleanNet agreed not to "abandon, release or compromise any of the Claims or settle the Adversary

Proceeding without Bankruptcy Court approval." Id. at 78 § 6(b).

The EcoSource parties objected to the CLA on numerous grounds, including their alleged

settlement with the Trustee and the assertion that CleanNet was not a creditor of LP&D because

CleanNet's proofs of claims were invalid. J.A. 94-104 (EcoSource Parties' Objs. to CLA) [#18-1].

## F.   Further Proceedings in the Bankruptcy Court

The Bankruptcy Court denied the motion to compel on May 26, 2016, J.A. 91-93 (Order

Den. Mot. to Compel) [#18-1], and the EcoSource parties filed a motion for reconsideration. J.A.

105-09 (Mot. for Reconsideration) [#18-1]. On August 16, 2016, the Bankruptcy Court held a

status conference. The court granted the motion for reconsideration to allow for an evidentiary

hearing on the EcoSource parties' motion to compel. J.A. 123 (Order on Mot. for Reconsideration)

[#18-1].[6] The court also found that the EcoSource parties' objections to the CLA relied on the

---

[6] Appellants' first Notice of Appeal, filed on June 9, 2016, concerned the May 26 Order denying
the motion to compel. Not. of Appeal [#1]. After granting the motion for reconsideration to allow
for an evidentiary hearing, the Bankruptcy Court also stayed Appellants' obligation to file a
designation of the record and a statement of the issues pursuant to Fed. R. Bankr. P. 8009.
Endorsed Order Granting Mot. to Extend Time to File Docs., Aquino v. EcoSource, LLC, No. 14-
01107-FJB (Bankr. D. Mass. June 28, 2016) ECF No. 110. This court subsequently
administratively closed the matter pending a motion to reopen the case after the Bankruptcy Court
issued its decision on the motion to compel. See Order [#7].

assertion that CleanNet was not a creditor of the bankruptcy estate, despite CleanNet having filed

multiple proofs of claims, which were entitled to prima facie validity and to which no party had

objected. J.A. 124 (Order Regarding Claim Objs.) [#18-1]. Accordingly, the court established a

deadline of August 26, 2016, for filing objections to CleanNet's claims, and set a single hearing on

the motion to compel, the motion for an order approving the CLA, and any objections to

CleanNet's claims that might be filed. Id.

The EcoSource parties filed timely objections to CleanNet's claims, which the Bankruptcy

Court later termed the "Original Objections." J.A. 160-173 (Original Objs.) [#18-1];[7] J.A. 2319

(Bankr. Ct. Dec.) [#18-12].

On November 29, 2016, CleanNet filed an amendment to Claim 58 to add a claim for

contribution, raising the amount of Claim 58 to $8,195,309.29. J.A. 287-317 (Am. Proof of Claim

58-2) [#18-2]. The EcoSource parties filed a motion to strike the amendment. J.A. 337-38 (Mot. to

Strike Am. Proof of Claim 58) [#18-2].

The Bankruptcy Court held an evidentiary hearing on December 6, 2016. The court denied

the EcoSource parties' motion to strike, but continued the evidentiary hearing to January 25, 2017,

to allow for further argument and to afford the EcoSource parties additional time to conduct

discovery and submit objections to "the amended claim." J.A. 1969 (Order on Mot. to Strike)

[#18-10].

The EcoSource parties filed ten additional objections (the "Supplemental Objections") to

amended Claim 58 which now included both the royalty claim and a contribution claim. Objection

---

[7] As the Bankruptcy Court noted in its decision, EcoSource filed two identical documents, minutes apart, objecting to CleanNet's claims. The Bankruptcy Court treated the later filed document as the operative objection. J.A. 2319 n.5 (Bankr. Ct. Dec.) [#18-12]. The double docketing linked the objections through the electronic filing system to the individual docket for each of CleanNet's 53 claims.

to Claim No. 58, Bankr. Ct. Dckt. No. 245 (Jan. 23, 2017); J.A. 2320 (Bankr. Ct. Dec.) [#18-12].[8]

The Bankruptcy Court heard additional arguments at the second day of the evidentiary hearing,

including the EcoSource parties' objections to the underlying merits of CleanNet's Assigned

Claims. See, e.g., J.A. 2046-60 (Day 2 Tr. of Evidentiary Hr'g, Jan. 25, 2017) [#18-10].

Following the evidentiary hearing and post-hearing briefing, the Bankruptcy Court issued a

Memorandum of Decision and three orders. The court first denied the EcoSource parties' motion

to compel the trustee to comply with the alleged settlement agreement, finding that there was no

binding agreement between the EcoSource parties and the Trustee. J.A. 2313-18 (Bankr. Ct. Dec.)

[#18-12]; J.A. 2309 (Order Den. Mot. to Compel) [#18-12].

The court next overruled the EcoSource parties' objections to CleanNet's original claims.

The court found the Original Objections unpersuasive or inapplicable, the Supplemental

Objections as untimely insofar as the EcoSource parties attempted to object to claims other than

Amended Claim 58, and found additional objections raised in the first instance at the evidentiary

hearing and in post-hearing filings also untimely. J.A. 2322-25 (Bankr. Ct. Dec.) [#18-12]; J.A.

2343 (Order Overruling Objs.) [#18-12]. The court declined to rule on the objections to

---

[8] The EcoSource parties identified 9 separate objections to Claim 58. See Objection to Claim No. 58, Bankr. Ct. Dckt. No. 245 (Jan. 23, 2017) (listing as objections (i) the Contribution Claim is contingent and, as such, must under 11 U.S.C. § 502(e)(1)(B) be denied; (ii) CleanNet is not entitled to contribution because there has been no release of claims; (iii) any claim for contribution is time-barred pursuant to the contribution statute; (iv) the claims fail because their assignment to CleanNet was prohibited by the franchise agreements between the Debtor and each assignor; (v) the claims fail because their assignment to CleanNet was prohibited by Massachusetts law; (vi) CleanNet's claims are barred by the doctrine of in pari delicto; (vii) the claims against the Debtor are barred by the doctrine of res judicata; (viii) treble damages and attorney's fees are not available under the Wage Act because neither the assignors nor CleanNet prevailed in an action; and (ix) the Contribution Claim is in the nature of a claim for subrogation and as such is barred because CleanNet was primarily liable for the Wage Act claims of the Debtor's former franchisees/employees). The Bankruptcy Court concluded there was an additional objection embedded in the ninth objection, in which the EcoSource parties argued that the Contribution Claim is subject to setoff in the amount of the Debtor's claims against CleanNet. See J.A. 2320-21 (Bankr. Ct. Dec.) [#18-12].

CleanNet's Amended Claim 58, finding that the Amended Claim added a claim for contribution only as an alternative theory of recovery and that the contribution claim was moot in light of the court's approval of the assigned claims. J.A. 2343 (Order Overruling Objs.) [#18-12].[9]

Last, the Bankruptcy Court entered an order approving the Claims Litigation Agreement, allowing the Trustee to transfer to CleanNet the right to prosecute the Adversary Proceeding on behalf of the LP&D estate. J.A. 2325-36 (Bankr. Ct. Dec.) [#18-12]; J.A. 2337-42 (Order Approving CLA) [#18-12].

G. Appeal

The EcoSource parties filed four separate notices of appeal. J.A. 2345-77 (Notice of Appeal and Statement of Election for Order Den. Mot. to Compel) [#18-12];[10] J.A. 2378-2415 (Notice of Appeal of Order Approving Claims Litigation Agreement) [#18-12];[11] J.A. 2416-48 (Notice of Appeal of Order [261] overruling objections to CleanNet's proofs of claim) [#18-12];[12] J.A. 2449-81 (Notice of Appeal of Order [262] overruling objections to CleanNet's proofs of claim) [#18-12].[13] The court granted Appellants' unopposed Motion to Open [#8] the original appeal, and Motion to Consolidate [#10] the four subsequent appeals. Elec. Order [#11]; Order [#12].

II.    Standard of Review

District courts have jurisdiction over appeals of Bankruptcy Court decisions pursuant to 28 U.S.C. § 158(a)(1). A district court reviewing the decision of the Bankruptcy Court may not set

---

[9] The order overruling objections to CleanNet's proofs of claims appears to have been docketed twice. See J.A. 2343-44 (Orders Overruling Objs.) [#18-12].

[10] This appeal was originally docketed as 18-cv-12163 [#1].

[11] This appeal was originally docketed as 18-cv-12135 [#1].

[12] This appeal was originally docketed as 18-cv-12139 [#1].

[13] This appeal was originally docketed as 18-cv-12142 [#1].

aside findings of facts unless they are clearly erroneous. Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997). Legal conclusions are reviewed de novo. Id.

    III.    Analysis

        A.  EcoSource Parties' Motion to Compel Trustee to Comply with Settlement

        The Bankruptcy Court denied the EcoSource parties' motion to compel the Trustee to comply with a purported settlement agreement on two grounds: 1) the parties did not intend to be bound by the agreement until a written agreement was finalized and approved by the Bankruptcy Court; and 2) the parties never agreed to an essential term, namely a waiver of claims by Nixon Peabody. J.A. 2313-18 (Bankr. Ct. Dec.) [#18-12].

        On appeal, the EcoSource parties argue 1) the parties had in fact agreed on the Nixon Peabody waiver and the Trustee used the issue as a post hoc rationale for failing to review the settlement terms; 2) the contemplation of a future formal writing did not mean the purported settlement agreement was not binding; and 3) contemplation of court approval does not bar enforcing the purported settlement agreement. Appellants' Br. 8-12 [#19].[14]

        As a threshold matter, contemplation of court approval is not a bar to requiring a trustee to submit the agreement for approval. Though the parties were required to submit any settlement agreement to the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019 as a compromise of claims, a settlement agreement can be binding on the parties pending court approval, assuming the other

---

[14] Appellants ask the court to "enter an Order compelling the Trustee to settle his claims." Appellants' Br. 26 [#19]. The underlying motion only sought an order compelling the Trustee to file a motion to compromise seeking approval of the settlement, see J.A. 16 (Mot. to Compel) [#18-1], appropriately recognizing that even if the court were to find a binding settlement agreement existed, such agreement would bind the Trustee to seek approval from the Bankruptcy Court to compromise the claims pursuant to Fed. R. Bankr. P. 9019 but would not itself bind the Bankruptcy Court or allow settlement without approval.

requisites for contract formation are met. See In re Seminole Walls & Ceilings Corp., 388 B.R. 386, 392 (M.D. Fla. 2008) (collecting cases).

Nonetheless, the court finds that the Bankruptcy Court did not err in finding the parties did not have a binding settlement agreement because the actions and writings of the parties did not indicate a present intention to be bound and because the parties had not agreed upon the resolution of the Nixon Peabody claim, a material term to the contemplated settlement.

Under Massachusetts law, in order to create an enforceable contract, there must be "agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). A writing that contemplates the future execution of a formal contract may give rise to a "strong inference" that the parties do not yet intend to be bound. Gel Sys. Inc. v. Hyundai Eng'g & Const. Co., Inc., 902 F.2d 1024, 1027 (1st Cir. 1990) (quoting Rosenfield v. U.S. Tr. Co., 290 Mass. 210, 216 (1935)). However, the parties may reach an agreement without such a writing if all material terms were agreed upon and a formal contract is "mere memorial." Novel Iron Works, Inc. v. Wexler Constr. Co., 26 Mass. App. Ct. 401, 407-08 (1988); see also Bandera v. City of Quincy, 344 F.3d 47, 52 (1st Cir. 2003) (finding mere fact that parties contemplated second more complete written agreement did not "by itself automatically preclude treating" the initial signed agreement as binding).

The EcoSource parties assert "[t]he parties in this case had a writing that reflected the terms of the settlement, the email message and the motion to continue the pre-trial deadlines," and their "contemplation of a further written agreement does not bar enforcement of the agreement of the parties." Appellants' Br. 11 [#19]. However, the email and the joint motion instead show the parties did not have a present intention to be bound before reducing the tentative agreement to a formal writing. In his email, the EcoSource parties' counsel stated, "I have confirmed with [the

Trustee] by voicemail that the [the EcoSource parties] - <u>subject to documentation acceptable to all parties</u> - are agreeable to a settlement pursuant to which they will pay the bankruptcy estate the sum of $225,000." J.A. 572 (Jan. 29, 2016 Email) [#18-3] (emphasis added). In the parties' joint filing with the Bankruptcy Court a few weeks later, they stated, "[t]he Parties have reached agreement in principle regarding the primary terms of a prospective settlement resolving the Trustee's claims in this matter. The aforesaid agreement in principle <u>is subject to the documentation of a definitive written settlement agreement in a form and substance acceptable to the Parties</u>, and approval of the Court." J.A. 580 ¶ 7 (Joint Mot. to Extend Pre-Trial Deadlines) [#18-3] (emphasis added). Using the conditional tense, the parties continued that they "believe that <u>if such agreement is reached</u>, requisite settlement pleadings could be filed by no later than forty-five (45) days from the date hereof." <u>Id.</u> ¶ 8 (emphasis added). Thus, facially, these documents establish the parties contemplated a writing laying out the settlement terms before the agreement became binding.[15]

Moreover, the parties did not have a meeting of the minds on a material term. While it appears undisputed that the Trustee insisted a settlement agreement include a "waiver" of Nixon Peabody's administrative claims against the bankruptcy estate, <u>see</u> J.A. 2146 ¶ 58 (EcoSource

---

[15] The cases cited by Appellants involve different scenarios. In <u>Quint</u>, for example, after a telephonic settlement negotiation, the defendant's attorney insisted that the plaintiff's attorney reconfirm with his client that the deal was final and the plaintiff would not back out. <u>Quint v. A.E. Staley Mfg. Co.</u>, 246 F.3d 11, 13 (1st Cir. 2001). In the purported oral agreement, the parties agreed the settlement was final without using conditional language, and thus rendered the future written agreement merely memorial. <u>Id.</u> at 13-14. In <u>Bandera</u> and in <u>Fidelity</u>, the parties had signed an initial writing setting out the terms of a settlement. <u>Bandera</u>, 344 F.3d at 52 (stating in dicta that a signed handwritten agreement, even with a contemplated future formal written agreement, could be binding); <u>Fid. and Guar. Ins. Co. v. Star Equip. Corp.</u>, 541 F.3d 1, 6 (1st Cir. 2008) (finding that, as all parties signed the Settlement Memorandum of Understanding with the present intent to settle claims, it was binding). Here, the parties used conditional language in their communications and, further, the writings on which Appellants rely did not have sufficient terms to establish a binding agreement.

Parties' Proposed Findings of Fact and Conclusions of Law) [#18-10], the draft settlement agreement included no such waiver. Instead, the draft stated, "Nixon Peabody will not seek to recover from the Settlement Proceeds any fees or expenses it has incurred in this matter . . . ." J.A. 45 (Settlement Doc.) [#18-1]. Thus, the proposal merely narrowed Nixon Peabody's avenue of recovery, so that the law firm could not seek to recover from the settlement proceeds, but otherwise allowed Nixon Peabody to retain its claim and seek recovery from other assets.[16] In essence, the EcoSource parties made a counteroffer, asking the Trustee to accept substantially different terms on the Nixon Peabody claim.[17] As such, no agreement had been reached at the time the EcoSource parties' counsel forwarded the counteroffer and the Trustee was free to reject it.[18]

Accordingly, based on the actions and writings of the two parties presented to the Bankruptcy Court, the Bankruptcy Court properly denied the EcoSource parties' motion to compel.[19]

---

[16] The Trustee characterized the new proposal as a "partial subordination" of Nixon Peabody's claim against the estate. J.A. 2012 (Aquino Test.) [#18-10].

[17] The Trustee subsequently obtained a full waiver of claims from Nixon Peabody. Trustee Br. 13 n.4 [#22]. At the time of the purported settlement with the EcoSource parties, however, no such waiver had been obtained.

[18] Appellants' complaint that the Trustee "discovered" the Nixon Peabody argument during subsequent litigation is rebutted by the Trustee's testimony that he alerted Attorney Haley immediately when he received the email to ensure that the EcoSource parties understood that any agreement had to include a waiver from Nixon Peabody of its claim for fees from the Chapter 11 phase of the bankruptcy. J.A. 1985 (Aquino Test.) [#18-10]. The EcoSource parties sent a draft agreement including a different term at the risk that the Trustee would then walk away from negotiations.

[19] The Trustee also argues that once he learned about a possible better offer from CleanNet in February 2016, he had an obligation to the estate under bankruptcy law not to settle with the EcoSource parties. Trustee Br. 15-19 [#22]. Having found that there was no binding agreement, the court need not reach this issue directly. The court notes that this obligation may well have colored the Trustee's understanding of the nascent stage of negotiations and might have served as a basis for the Bankruptcy Court to reject the deal if the Trustee had presented it. That said, litigation may well have been avoided if the Trustee had stated to the EcoSource parties that he would continue to consider other offers until an agreement was executed.

B.   Approval of Claims Litigation Agreement

Under the bankruptcy statutes, a claim for fraudulent conveyance is included in the property of the debtor's bankruptcy estate. In re Ontos, Inc., 478 F.3d 427, 431 (1st Cir. 2007) (citing 11 U.S.C. § 541(a)(1) (stating property of estate is comprised of all "legal or equitable interests of the debtor in property as of the commencement of the case")). On the Trustee's motion, the Bankruptcy Court approved the Claims Litigation Agreement ("CLA") between the Trustee and CleanNet, which permits CleanNet to prosecute the Adversary Proceeding, including avoidance claims, on behalf of the LP&D bankruptcy estate. J.A. 2333-36 (Bankr. Ct. Dec.) [#18-12]; J.A. 2337-42 (Order Approving CLA). The Bankruptcy Court based its approval on findings that: 1) the CLA is not ambiguous; 2) CleanNet is a creditor both as a holder of a superpriority administrative claim and as holder of unsecured claims; 3) the CLA is not a sale of claims; 4) the CLA is a good and creative deal for the estate; 5) the CLA authorizes prosecution of the avoidance action on behalf of the estate and does not alter the Bankruptcy Code-prescribed distribution scheme; 6) the CLA does not compromise estate rights; and 7) the EcoSource parties' claim that they are parties having interests in the estate that would be harmed by the CLA is incorrect.

The EcoSource parties appeal this order, arguing that 1) the Trustee did not have authority to convey the avoidance action to CleanNet; 2) the Trustee did not have authority to transfer the right to litigate the avoidance action; and 3) the Trustee did not meet his burden to demonstrate the CLA was in the best interest of the estate. Appellants' Br. 14-20 [#19].

1.   Authority to Convey the Adversary Proceeding

Appellants' first argument rests on a false premise, namely that the avoidance action claims were conveyed.

In support of their argument, Appellants state that "the Bankruptcy Court found that the import of the agreement was that the Trustee was 'relinquishing control of the prosecution,

litigation and settlement of the claims to CleanNet,'" and that therefore "the Trustee is selling the claims to CleanNet as there is no indicia of ownership or control over the claims that remains with the Trustee." Appellants' Br. 14 [#19] (citing J.A. 2330 (Bankr. Ct. Dec.) [#18-12]). Yet, the Bankruptcy Court found no such "import of the agreement." Instead, it carefully noted that while one provision of the CLA allowed CleanNet "to file all pleadings, conduct all discovery, and take other action as CleanNet may determine to liquidate the claims," the CLA did not allow CleanNet to prosecute the Adversary Proceeding for its exclusive benefit, or to compromise estate rights without the approval of the Bankruptcy Court. J.A. 2330-32 (Bankr. Ct. Dec.) [#18-12]. Instead, under the CLA, the claims remain the property of the estate, with all recovery returning to the estate, and where the Trustee remains involved in the litigation as CleanNet must consult with him as the litigation proceeds "so that the Trustee may fulfill his duties to the bankruptcy estate." J.A. 77, 79 §§ 1, 6, 6(b), 6(c) (CLA) [#18-1]. Further, while Appellants contend their characterization of the transaction "is consistent with the Trustee's own description of the transaction as one in which CleanNet will 'acquire' the claims against the EcoSource Parties," Appellants' Br. 18 (citing J.A. 55 ¶ 13 (Trustee's Opp'n to Mot. to Compel) [#18-1])), the full clause used by the Trustee is that CleanNet "would acquire the right to prosecute the claim on behalf of the estate." J.A. 55 ¶ 13 (Trustee's Opp'n to Mot. to Compel) [#18-1]). Appellants' selective quotation does not change the terms of the actual agreement approved by the Bankruptcy Court.

In sum, considering the CLA itself, this court finds that the transaction under the CLA is not a sale of the claims of the estate.

       2.  The Authority to Convey the Right to Prosecute an Adversary Proceeding

The EcoSource parties also argue that under the Bankruptcy Code, even the right to prosecute an adversary proceeding as a derivative action may not conveyed to a creditor. They urge this court to follow Surf N Sun Apts., Inc. v. Dempsey, where the district court vacated the

bankruptcy court's decision authorizing a creditor to pursue an avoidance action on behalf of the estate. 253 B.R. 490, 493 (M.D. Fla. 1999). However, Surf N Sun concerned the creditor's standing to sue without trustee approval, an entirely different question than what is presented here. See Surf N Sun, 253 B.R. at 491 (stating trustee opposed creditor's attempt to bring suit on behalf of estate).[20] Similarly, In re Milazzo, 450 B.R. 363, 369-70 (D. Conn. 2011), which Appellants cite, found only that the creditor could not force the trustee to sell avoidance action claims, not that such claims could not be brought in a derivative capacity where the trustee consents.

Other authorities cited by Appellants fare no better as they concern only the unremarkable point that creditors may not bring cases in their own name and do not hold that a court may not grant a creditor derivative standing to bring an avoidance action on behalf of the estate. See e.g. In re McGuirk, 414 B.R. 878, 880 (Bankr. N.D. Ga. 2009) (denying sale of claims to creditor who was not seeking derivative standing but was seeking to bring such claims in its own name); In re Conley, 159 B.R. 323, 325 (Bankr. D. Idaho 1993) (denying creditors independent standing to bring avoidance action); In re N. Atl. Millwork Corp., 155 B.R. 271, 281, 284 (Bankr. D. Mass. 1993) (finding in Chapter 11 case that creditor did not have independent standing to pursue action without appointment in a plan of reorganization).

Here, the Bankruptcy Court based its approval of the CLA on a line of Second Circuit cases that have considered whether a creditor may prosecute claims on behalf of the estate with the Trustee's consent. See J.A. 2336 (Bankr. Ct. Dec.) [#18-12]. Those cases allow derivative creditor

---

[20] In addition, the district court's rejection of "an exception recognized by some federal courts 'to grant "derivative standing" to creditors [to] institute avoidance actions on behalf of the estate upon "showings of particularly extraordinary circumstances,"'" 253 B.R. at 493, is not persuasive here where the First Circuit has acknowledged such an exception, albeit in dicta. See In re Ontos, Inc., 478 F.3d 427, 431–32 (1st Cir. 2007) (recognizing creditors' standing to pursue claims during bankruptcy proceedings when a trustee or debtor in possession unjustifiably fails to pursue the claim); see also In re Pilavis, 233 B.R. 1, 3–4 (Bankr. D. Mass. 1999); Glinka v. Abraham & Rose Co. Ltd., 199 B.R. 484, 493–94 (D. Vt. 1996)).

standing if 1) the creditor has consent from the trustee and 2) the bankruptcy court finds that the suit is a) in the best interest of the estate and b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. See, e.g., In re Housecraft Indus. USA, Inc., 310 F.3d 64, 72 (2d Cir. 2002) (upholding agreement in Chapter 7 context where creditor was allowed to retain 80% of any recovery in avoidance action); In re Commodore Int'l Ltd., 262 F.3d 96, 99-100 (2d Cir. 2001) (finding, in the Chapter 11 context, that such an agreement "can be an effective method" for the debtor in possession to manage the estate and fulfill its duties); In re Greenberg, 266 B.R. 45, 51 (Bankr. E.D.N.Y. 2001) (allowing assignment of right to prosecute to creditor who held 99% of all outstanding claims against bankruptcy estate); In re Vogel Van & Storage, Inc., 210 B.R. 27, 33-34 (N.D.N.Y. 1997), aff'd on other grounds, 142 F.3d 571 (2d Cir. 1998) (approving agreement as it would aid the estate in "maximiz[ing] its recovery" and there was "no danger of inequitable recovery"). Other circuits have also approved similar agreements. See In re Racing Servs., 540 F.3d 892, 902 (8th Cir. 2008) (adopting Second Circuit standard for instances where Chapter 7 trustee consents to derivative standing); In re P.R.T.C., Inc., 177 F.3d 774, 781 (9th Cir. 1999) (approving derivative standing for agreement between trustee and creditor where estate received 50% of proceeds of avoidance action). This court concurs that an agreement for derivative standing is permissible in such circumstances.

3. Best Interest of the Estate

Appellants argue further that even if such an agreement is permissible in general, "there is no evidence that any such transfer would be 'beneficial to the fair and efficient resolution of the bankruptcy proceedings.'" Appellants Br. 15 [#19] (citing In re Metro. Elec. Mfg. Co., 295 B.R. 7, 13 (Bankr. E.D.N.Y. 2003)). They assert the CLA should be rejected because it instead "licenses CleanNet to pursue an individually motivated campaign to destroy the EcoSource Parties." Id.

The case Appellants cite, In re Metro, presents a substantially different situation than the facts here. In that Chapter 11 case, the trustee proposed to sell claims to a creditor outright in return for $25,000 and 10% of any recovery. 295 B.R. at 10. The court rejected the agreement in part because the trustee did not believe the avoidance claims had merit and therefore "the Trustee's consent [was] half-hearted at best." Id. at 13. As a result, the court found that the creditor's purchase of potentially meritless claims "may border on a wish to harass the new owners of the business and some of their suppliers," id. at 14, and further based its decision on the minimal benefit that the estate could derive from the agreement. Id.

Two other Second Circuit cases are more applicable. In In re Housecraft, the court approved an agreement where the trustee and creditor entered into a co-prosecution plan, even though the creditor would retain 80% of the proceeds of the avoidance action. 310 F.3d at 72. The court found significant that the trustee remained involved in the suit, that the agreement was "necessary" because the estate would otherwise be unable to pursue the suit on its own, and that it "promoted the efficient resolution of the proceedings" because the agreement prevented further complex litigation. 310 F.3d at 71. In In re Greenberg, a trustee agreed with a creditor holding 99% of claims against the estate to transfer prosecutorial powers based on a guarantee that the return to the estate would be in excess to the defendant's settlement proposal. 266 B.R. at 49. The court upheld the agreement, determining it would "maximize the value to the debtor's estate" and would not lead to prejudicial distribution of proceeds because the prosecuting creditor held almost all of the claims against the estate. Id. at 50-51.

Here, there is no argument that the avoidance claims lack potential merit. The claims will be prosecuted on behalf of the estate with all returns financially benefitting the estate. In the absence of the CLA, it is quite possible that the Trustee would be limited in pursuing these claims, given the previous need to resort to a litigation financing agreement to finance the Adversary

Proceeding. See Order Approving Limited Postpetition Financing, Bankr. Ct. Dckt. No. 172 (Jan. 23, 2015).

Moreover, while concerns about improper motives behind the transfer of prosecutorial powers in an adversary case are properly considered when evaluating such an agreement, Appellants offer only CleanNet's statement that the proposed settlement agreement between the Trustee and the EcoSource parties "makes no sense for CleanNet" to support the claim that CleanNet's interests conflict with that of the estate. Appellants' Br. 15 [#19] (citing J.A. 575 (CleanNet Letter to Trustee) [#18-3]). The court cannot find, on this minimal basis, that CleanNet was motivated by a desire to "destroy" the Appellants, see id., rather than a business interest, as a creditor, in maximizing returns to the estate.

Appellants contend finally that the Bankruptcy Court failed to properly evaluate the CLA. Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004, when a trustee seeks to "use, sell, or lease, other than in the ordinary course of business, property of the estate," such action is permitted upon notice and a hearing and evaluation of the action for a sound business purpose. In evaluating a trustee's decision, a court "must be mindful that a 'debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." In re Cadkey Corp., 317 B.R. 19, 22-23 (D. Mass. 2004) (quoting in part In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001).

The Bankruptcy Court properly found, under the business judgment standard, that the CLA conferred material benefits on the bankruptcy estate. At base, there are guaranteed returns to the estate that are greater than the terms proposed in the settlement agreement with the EcoSource parties. Further, Appellants do not explain why the exact Loan Amount provided by CleanNet in the original litigation Financing Agreement or the cost of future litigation make a material

difference in assessing the benefit of the CLA. Under the CLA, the estate will receive the "difference of $325,000 and the Loan Amount" and so the estate will receive $325,000 or more in a combination of claim recovery and forgiveness of the Loan Amount and will not bear any further litigation costs or risks. J.A. 77-79 at §§ 2(i), 6 (CLA) [#18-1].

Finally, Appellants' argument that the court should have evaluated the agreement not only for a sound business purpose under 11 U.S.C. § 363, but also a "fair and equitable" test pursuant to Fed. R. Bankr. P. 9019 on the ground that the CLA amounted to a compromise or sale of estate property fares no better. Appellants' Br. 18-19 [#19] (citing, e.g., Matter of Bos. & Providence R.R. Corp., 673 F.2d 11, 12-13 (1st Cir. 1982) (holding evaluation of settlement that amounted to compromise of claims required further evidence to determine fairness)). As set forth above, the CLA is not a sale or compromise of the claims.

Therefore, the court finds no error in the Bankruptcy Court's determination that the Trustee met his burden to establish the CLA was in the best interest of the estate, and, accordingly, affirms the Bankruptcy Court's order.

### C.   Objections to CleanNet's Claims

Appellants also appeals the Bankruptcy Court's order overruling their objections to CleanNet's claims against the LP&D estate.[21]

Upon learning that one of the EcoSource parties' objections to the CLA was that CleanNet was not properly a creditor of the LP&D estate, the Bankruptcy Court noted that no objections had been filed as to CleanNet's proofs of claims and set a deadline for the EcoSource parties to file any such objections. J.A. 124 (Order Regarding Claim Objs.) [#18-1].

---

[21] The Bankruptcy Court assumed "without deciding that the Defendants[] have standing to object to CleanNet's claims," finding that the outcome would be the same as if the court determined the EcoSource parties lacked standing. J.A. 2321 at n.6 (Bankr. Ct. Dec.) [#18-12]. This court similarly does not address Appellants' standing.

22

The EcoSource parties' timely filed objections to the originally filed claims contended that 1) the claims asserted by CleanNet are claims for subrogation and are barred because CleanNet has primary responsibility for the claims; 2) CleanNet did not commence any action seeking contribution within the time period required by M. G. L. c. 231B, § 3; and 3) the claims should be set off by Debtor's claims against CleanNet. J.A. 160-173 (Original Objs.) [#18-1]. The Bankruptcy Court evaluated these objections and overruled each one. J.A. 2321-2323 (Bankr. Ct. Dec.) [#18-12]. The EcoSource parties do not appear to challenge this part of the decision on appeal.

The EcoSource parties nonetheless argue that the court erred by 1) misallocating the burden of proof; 2) failing to "give effect to Bankruptcy Rule 7015" and considering all the submitted evidence; and 3) failing to require CleanNet establish the validity of its claims and ignoring "the majority" of the EcoSource parties' Proposed Findings of Fact and Conclusions of Law. Appellants' Br. 20-25 [#19].

A claim executed and filed in accordance with the federal bankruptcy rules provides "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Fed. R. Bankr. P. 3007 governs objections to claims and requires the filing of both an objection and a notice of objection. A properly filed objection overcomes the presumption of claim validity if supported by substantial evidence, In re Hemingway Transp., Inc., 993 F.2d 915, 925 (1st Cir. 1993), and when an objection with the requisite evidence is filed, the burden shifts to the claimant to "prove the validity of the claim by a preponderance of the evidence." In re Colonial Bakery, 108 B.R. 13, 15 (Bankr. D.R.I. 1989) (internal citation omitted). Untimely objections need not be addressed by the court. See, e.g., In re Caruso Music Co., 2007 WL 1933928, at *1 (Bankr. D. Mass. June 25, 2007). Here, the timely objections filed by the EcoSource parties did not contest

the underlying elements of the claims, and accordingly failed to overcome the presumption of claim validity.

Appellants' objection that the Bankruptcy Court did not require CleanNet to meet its burden of proof as to the underlying elements of its claims ignores the Bankruptcy Court's finding of waiver and ignores applicable due process principles. The Bankruptcy Court set a firm deadline for submissions of objections to CleanNet's original claims so that CleanNet could provide a response prior to the evidentiary hearing and so that the court could then properly adjudicate both the CLA and the EcoSource parties' objections to CleanNet's claims. See J.A. 124 (Order Regarding Claim Objs.) [#18-1]. Yet, it was only at the evidentiary hearing, well after the Bankruptcy Court's deadline, that the EcoSource parties challenged the underlying elements of CleanNet's Assigned Claims. See J.A. 2046-60 (Day 2 Tr. of Evidentiary Hr'g, Jan. 25, 2017) [#18-10]. By then, it was too late. The EcoSource parties had failed to provide "reasonable notice" to CleanNet and the Bankruptcy Court as to these arguments, in contravention of Fed. R. Bankr. P. 9014 and common conceptions of due process. If the EcoSource parties needed more time or needed additional discovery to properly object to CleanNet's claims, they could have requested a continuance of the deadline from the court.

Appellants' argument that they "rebutted the initial presumption of the validity" of CleanNet's claims is thus meritless. The EcoSource parties provide no argument on appeal, and do not point to any part of the record, to show that their three timely objections contained the necessary "substantial evidence" to rebut the presumption of validity or to show the Bankruptcy Court erred in overruling those objections. Insofar as Appellants contend here that objections raised in the first instance at or after the evidentiary hearing rebutted the presumption of validity of CleanNet's claims, those objections were rightfully deemed waived.

24

Appellants also argue that their untimely objections should have been considered because the Bankruptcy Court, "by permitting CleanNet to amend its proof of claim immediately before the commencement of trial," in effect applied Fed R. Civ. P. 15 to the proceedings. Appellants' Br. 21-22 [#19]. Under Fed. R. Civ. P. 15(b)(2), an issue "not raised by the pleadings" may be treated as properly pleaded if "tried by the parties' express or implied consent."[22]

Appellants' argument is unconvincing. First, the amended proof of claim, (Claim 58-2) – where CleanNet asserted an alternative claim for contribution – is of no moment, where the Bankruptcy Court continued the evidentiary hearing and gave the EcoSource parties additional discovery and an opportunity to file objections to that amended claim, and the ultimately declined to reach this alternative claim for contribution in light of its finding as to the original claims. J.A. 1969 (Order on Mot. to Strike) [#18-10]. And even the Supplemental Objections did not contest the underlying elements of the assigned claims. In sum, the order granting CleanNet's amendment to Claim 58 did not open the door to raising new objections to the unamended claims at the evidentiary hearing or in post-hearing Proposed Findings of Fact and Conclusions of Law. Accordingly, Rule 15 is inapplicable as the parties did not expressly or impliedly consent to address new issues pertaining to the unamended proofs of claims.

Thus, as the Bankruptcy Court properly found that the EcoSource parties failed to timely object to the underlying merits of the assigned claims, the court need not reach the EcoSource parties' final argument that CleanNet did not establish the validity of its claims. As those claims were due prima facie validity pursuant to Fed. R. Bankr. P. 7001(f) and as the EcoSource parties did not provide substantial evidence to challenge said presumption, the claims' validity remains

---

[22] Fed. R. Bankr. P. 7015 provides that Fed. R. Civ. P. 15 applies in "adversary proceedings." As Appellants concede, however, the rule does not specifically apply to contested matters brought under Fed. R. Bankr. P. 9014. Appellants' Br. 21 [#19].

undisturbed. Accordingly, the court affirms the Bankruptcy Court's orders regarding CleanNet's claims.[23]

IV.   Conclusion

Therefore, for the reasons discussed above, the court AFFIRMS the Bankruptcy Court's denial of the EcoSource parties' Motion to Compel, AFFIRMS the Bankruptcy Court's order approving the Claims Litigation Agreement and AFFIRMS the overruling of the EcoSource parties' objections to CleanNet's claims against the LP&D estate. This matter is remanded to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order.

IT IS SO ORDERED.

August 31, 2020                                          /s/ Indira Talwani
                                                        United States District Judge

---

[23] The court notes that Appellants' substantive challenges to the assigned claims would fail even if there was no waiver. The EcoSource parties assert that because LP&D (as CleanNet of New England) was originally named in the Sola class action but was not named when an amended complaint was filed, and because that amended complaint was filed without leave of court, LP&D's "dismissal" from the action was "an adjudication on the merits, under Rule 41(b) and it is entitled to res judicata effect." Appellants' Br. 23-25 [#19]. This is a meritless argument. First, Mass. R. Civ. P. 41(b) (and the federal equivalent) requires a court order, on its own motion or on the defendant's motion, and Appellants point to no such order. Instead, Rule 41(a), which allows a plaintiff to dismiss an action, without leave of court, at any time before the adverse party serves an answer or motion for summary judgment, applies. When the Amended Complaint was filed (thereby dismissing LP&D), LP&D had not yet answered or filed a motion for summary judgment. Accordingly, plaintiff's dismissal of LP&D was a voluntary dismissal under Rule 41(a). Such a dismissal is without prejudice in the absence of a prior filed and dismissed action, which is not alleged here. Furthermore, Paul Oliveira was dismissed from the case pursuant to Mass. R. Civ. P. 41(a)(1)(i), where dismissal is "without prejudice" "[u]nless otherwise stated in the notice of dismissal." See Notice of Voluntary Dismissal, Sola v. CleanNet USA, Inc., No. 12-cv-10580 (D. Mass. Mar. 30, 2012) ECF No. 1-18. And Lisa Ellis-Oliveira was never a party to the Sola class action.

In addition, though the EcoSource parties are correct that claims brought pursuant to M. G. L. c. 93A are inapplicable to employment relationships, Appellants' Br. 22-23 [#19], CleanNet's proofs of claims sought treble damages based on alleged Wage Act violations. As the EcoSource parties failed to disturb the prima facie validity of these claims asserting Wage Act violations, the Chapter 93A argument is inapplicable.